IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

TERRI NELL BOGAN                                                                          PLAINTIFF

v.                                  No. 3:12–CV–300–BD

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                             DEFENDANT

## ORDER AFFIRMING THE COMMISSIONER

Terri Nell Bogan is a former flight attendant. She seeks judicial review of the denial of her application for disability insurance benefits. Ms. Bogan worked as a flight attendant for over 20 years.[1] In 1991 and 1998, she suffered on-the-job back injuries. After the latter injury, she became addicted to prescription pain medication. Her employer sent her to a substance abuse treatment facility.[2] Ms. Bogan recovered, but she did not return to her flight attendant job. Instead, she went on protracted medical leave.[3]

After four years of medical leave, she applied for social security disability benefits. She bases disability, in substantial part, on the back injuries. She also relies on degenerative disc disease, neck pain, and anxiety.[4] Despite her reasons for disability,

---

[1] SSA record at pp. 209, 259 & 459.

[2] *Id*. at p. 71.

[3] *Id*. at pp. 71-72 & 239.

[4] *Id*. at pp. 208 & 226.

Ms. Bogan stopped working because she broke her foot.[5] She also recovered from the foot injury. She first alleged disability beginning with the first back injury, but at her hearing, she amended her onset date to February 15, 2008 — when she broke her foot and stopped working.[6]

**The Commissioner's decision**. After considering the application, the Commissioner's ALJ determined that Ms. Bogan had severe impairments — status post compression fracture of the lumbar spine; degenerative disc disease in the neck and back; right lumbar radiculopathy; depression; and anxiety disorder[7] — but that she could do some light work.[8] Because a vocational expert identified available work,[9] the ALJ determined Ms. Bogan is not disabled and denied the application.[10]

---

[5]*Id*. at p. 208.

[6]*Id*. at pp. 67-68 & 208.

[7]*Id*. at 47.

[8]*Id*. at p. 49.

[9]*Id*. at pp. 97-98.

[10]*Id*. at pp. 54-55.

After the Commissioner's Appeals Council denied a request for review,[11] the ALJ's decision became a final decision for judicial review.[12] Ms. Bogan filed this case to challenge the decision. In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[13]

**Ability to work**. Ms. Bogan challenges the ALJ's determination that she could work. She claims the combination of the residuals from her remote back injuries, degenerative disc disease, depression, anxiety, and post-traumatic stress disorder prevented her from working.[14] She argues that the ALJ erred in evaluating her credibility.[15] She maintains that the ALJ should have adopted her psychiatrist's

---

[11]*Id.* at p. 1.

[12]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[13]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[14]Docket entry # 14, pp. 14-15.

[15]*Id.* at pp. 21-25.

statements about her inability to work.[16] She also says that the ALJ erroneously failed to question the vocational expert about all of her impairments.[17] She insists that substantial evidence does not support the ALJ's decision.[18]

For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to show Ms. Bogan could perform some light work.[19] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[20] In this case, the ALJ reduced light work by occasional stooping and bending, and eliminated crouching. The ALJ also required unskilled work with limited contact with others.[21] A reasonable mind would accept the following probative evidence[22] as adequate to show Ms. Bogan can work within these parameters:

---

[16]*Id*. at pp. 16-19.

[17]*Id*. at pp. 16, 19, 21 & 25.

[18]*Id*. at pp. 14 & 26.

[19]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

[20]20 C.F.R. § 404.1567(b).

[21]SSA record at p. 49 (requiring work where interpersonal contact is incidental to work performed; complexity of tasks is learned and performed by rote, with few variables and little judgment; and supervision is simple, direct and concrete).

[22]The medical evidence dates back to 2000. The relevant time period began on February 15, 2008 — the amended onset date. The most probative evidence is the medical evidence from 2008 forward.

1. <u>Evidence about degenerative disc disease</u>. Degenerative disc disease "refers to a gradual deterioration of the spongy disks in the … spine."[23] The disks cushion the vertebrae and facilitate movement of the head, neck, and back.[24] "Over time, … disks slowly become flattened and less elastic due to everyday wear and tear."[25] These degenerative changes are part of the aging process, "affect[ing] everyone to some degree, often without causing any bothersome symptoms."[26] Spinal stenosis or disc impingement causes bothersome symptoms.[27] If a disc protrusion impinges on the thecal sac or a nerve root, a person will likely experience symptoms.[28]

Diagnostic imaging of Ms. Bogan's neck and spine shows degenerative changes, but no spinal stenosis or disc impingement. Degenerative changes in the upper back and neck are "mild," with the exception of marked disc space narrowing between the last three disks in the neck.[29] Degenerative changes are present throughout the low back, but no acute

---

[23] Greg Annussek, 2 The Gale Encyclopedia of Med. 921 (4th ed.).

[24] *Id*.

[25] *Id*.

[26] *Id*.

[27] *See* Mary Jeanne Krob & Laura Brasseur, 5 Attorneys Textbook of Med. 15.32 (3d ed.) (explaining that a disc protrusion may be asymptomatic unless there is some degree of spinal stenosis or disc impingement).

[28] *See* Dan J. Tennenhouse, Attorneys Med. Deskbook § 26:8(3) (4th ed.) ("[L]umbar nerve root compression at the spine produces the sensation of pain "radiating" down the leg along the sciatic nerve.").

[29] SSA record at p. 35 (Aug. 1, 2011, marked disc space narrowing at C5-6 and C6-7; mild degenerative facet changes throughout the cervical spine); p. 383 (Oct. 23, 2008, minimal degenerative joint disease at mid back). *See also id*. at pp. 382 & 385.

disk herniation or significant stenosis is present.[30] The degenerative changes support Ms. Bogan's report that she could not bend, sit, stoop, squat, or lean for very long due to back pain,[31] but they do not preclude all work because they do not prevent lifting, carrying, walking, standing, sitting, pushing, or pulling.[32] Because the limitation on stooping, bending, and crouching responded to degenerative changes, a reasonable mind would accept the evidence as adequate to show Ms. Bogan could work within the defined parameters.

2. <u>Evidence about mental impairment</u>. One of Ms. Bogan's primary reasons for disability is mental impairment flowing from depression and

---

[30]*Id*. at p. 430 (Mar. 22, 2006, "Moderate to moderately severe disc space narrowing and disc dessication are noted at all lumbar levels except for L1-2 which demonstrates only mild degeneration. … No acute disc herniation or significant stenosis.").

[31]*Id*. at p. 208.

[32]*Accord Gearhart v. Astrue*, No. 3:11–CV–278–JTK, 2013 WL 440807, at *2 (E. D. Ark. Feb. 5, 2013) (rejecting allegation of disabling back pain where MRIs showed no significant stenosis and no disc impingement); *Phillips v. Astrue*, No. 4:11–CV–854, WL 5877623, at *1-2 (E.D. Ark. Nov. 20, 2012) (rejecting allegation of disabling degenerative disc disease of the lumbar spine where MRI showed "mild" degenerative disc disease at L5–S1 with a posterior annular tear and a "small" broad-based disc protrusion in the lumbar spine, but no evidence of impingement of the thecal sac or a nerve root, disc extrusion, canal stenosis or foraminal stenosis); *Wilson v. Astrue*, No. 09–2064, WL 2268370, at *27 -28 (W.D. Ark. June 3, 2010) (determining the record did not support disability based on back, neck, or shoulder pain where radiographic testing showed small disk bulges at T2–3 and T5–6 without significant canal/foraminal stenosis, and mild degenerative disk and arthritic changes; and medical evidence documented no disk herniations, range of motion limitations, neurological deficits, or motor deficits); *Woods v. Astrue*, No. 07-5194, 2008 WL 4710692, at *10 (W.D. Ark. Sept. 10, 2008) (finding substantial evidence supported determination that back and leg pain was not disabling where MRI of the lumbar spine showed a suspected right hemilaminectomy defect at L4-5 with minimal disc bulge without significant central or lateral recess stenosis; minimal posterior disc bulge at L3-4 and L5-S1; and no abnormal enhancement suggesting discitis or vertebral osteomyelitis).

anxiety. She also maintains that she suffers post-traumatic stress disorder flowing from her work as a flight attendant on September 11, 2001.[33] The record shows that a psychiatrist evaluated Ms. Bogan in 2003, and began treating her in March 2008.[34] Ms. Bogan saw her psychiatrist fairly regularly during the relevant time period, more often than any other physician. At Ms. Bogan's request, the psychiatrist provided letters suggesting she was disabled due to mental impairment.[35] Most of the psychiatrist's treatment notes are illegible, but the legible portions do not support disability.

In the most recent letter — in September 2010 — the psychiatrist stated that Ms. Bogan had a very limited ability to function without distracting others or being paranoid of others, and required treatment for the foreseeable future.[36] Ms. Bogan's testimony indicates that treatment succeeded. She explained, "mentally, I'm stable, and can be around

---

[33]SSA record at pp. 208, 235 & 459.

[34]*Id*. at p. 446 (reporting that she used to work as a flight attendant, but has a new job delivering flowers).

[35]*Id*. at p. 551 (Oct. 1, 2008, letter saying that Ms. Bogan has a mental health related disability and it is medically necessary for her dog to travel with her as part of mental health treatment); p. 496 (July 22, 2010, letter discussing Ms. Bogan's physical problems and exertional limitations; stating that she learned to hide her pain and feelings, and to put up a good front in public; explaining he's prescribed just about all anti-depressant and anti-anxiety medications with only moderate improvement; and opining that Bogan's adaptive skills are compromised such that Bogan can't work full time at any job at an adequate and consistent level); p. 495 (Sept. 21, 2010, letter stating that Ms. Bogan is still very depressed; she had flashbacks, fear, and intrusive thoughts on anniversary of 9/11; she now takes an psychotic medication; her ability to function without distracting other or being paranoid of others is very limited; and she needs continued treatment).

[36]*Id*. at p. 495.

people."[37] She testified that medication helped control her anxiety.[38] Although the psychiatrist characterized Ms. Bogan's adaptive skills as too compromised to allow working,[39] the psychological examiner identified no problems with adaptive skills. Ms. Bogan drives, shops independently, travels, and participates in social activities.[40]

In 2011, Ms. Bogan told her psychiatrist and her new primary care physician that she wanted to return to her flight attendant job.[41] Those intentions contradict her claim of disabling mental impairment. The contradictions serve as a sufficient basis for discounting the psychiatrist's statements,[42] as well as for discounting Ms. Bogan's credibility.[43] To the

---

[37]*Id*. at p. 84.

[38]*Id*. at p. 88.

[39]*Id*. at p. 496.

[40]*Id*. at pp. 74-75, 444, 462, 498 & 547.

[41]*Id*. at pp. 33, 40, 560 & 562. *See also id*. at p. 440 (similar report in 2008).

[42]*See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."); *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000) ("[A]n ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record.").

[43]*Accord Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) ("Seeking work and working at a job while applying for benefits, are activities inconsistent with complaints of disabling pain."); *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998) (upholding ALJ's credibility assessment which noted that although claimant's long work history supported her subjective complaints of disabling pain, the claimant stopped working because she was laid off, she sought work after her alleged disability on-set date, and she received unemployment benefits after her alleged disability on-set date); *Orrick v. Sullivan*, 966 F.2d 368, 370 (8th Cir. 1992) (upholding credibility evaluation where claimant worked for many years as barber with low back pain she alleged was disabling); *Robinson v. Sullivan*, 956 F.2d 836, 840 (8th Cir. 1992) (finding that claimant's

extent Ms. Bogan suffered from depression, anxiety, and post traumatic stress disorder, the ALJ's limitations responded to those impairments. A reasonable mind would accept the evidence as adequate to show Ms. Bogan could work within the defined parameters.

The ALJ questioned a vocational expert[44] about the availability of work for a person who could perform unskilled, light work requiring only occasional stooping and bending, no crouching, and limited contact with others.[45] Because these limitations captured the concrete consequences of Ms. Bogan's impairments,[46] the ALJ's question was proper. The vocational expert identified two unskilled jobs as representative work.[47] The vocational expert's testimony shows work existed that Ms. Bogan could do, regardless of whether such work exists where she lives, whether a job vacancy exists, or

---

request for medical release for work contradicted claim of constant and disabling pain and observing that one treating physician opined that claimant should not return to heavy work, but was suitable for retraining for other employment).

[44]*See Gilliam v. Califano*, 620 F.2d 691, 694 n.1 (8th Cir. 1980) ("The purpose of a vocational expert is to "to assess whether jobs exist for a person with the claimant's precise disabilities.").

[45]SSA record at p. 96.

[46]*See Perkins v. Astrue*, 648 F.3d 892, 901-02 (8th Cir. 2011) ("The hypothetical question must capture the concrete consequences of the claimant's deficiencies. However, the ALJ may exclude any alleged impairments … properly rejected as untrue or unsubstantiated."); *Lacroix v. Barnhart*, 465 F.3d 881, 889-90 (8th Cir. 2006) ("[T]he hypothetical question need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the 'concrete consequences' of those impairments.").

[47]SSA record at p. 98 (identifying fast food workers and cleaners as representative work).

whether she would be hired if she applied for work.[48] Because such work existed, Ms. Bogan was not disabled under social security disability law.

**Conclusion**. Substantial evidence supports the ALJ's decision denying Ms. Bogan's application. The ALJ made no legal error. For these reasons, the court DENIES the request for relief (docket entry # 2) and AFFIRMS the decision denying the application.

It is so ordered this 2nd day of January, 2014.

_____
UNITED STATES MAGISTRATE JUDGE

---

[48] 42 U.S.C. § 1382c(a)(3)(B) (defining disability under social security disability law).